# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA
# AT ERIE

| | |
|---|---|
| DAWN GERLACH, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:16-cv-189 Erie |
| ) | |
| v. ) | |
| ) | ORDER DENYING DEFENDANT'S |
| ) | MOTION FOR SUMMARY |
| MTR GAMING GROUP, INC., ) | JUDGMENT |
| T/A/D/B/A PRESQUE ISLE DOWNS, ) | |
| NOW BY MERGER, EL DORADO ) | |
| RESORTS ) | |
| ) | |
| Defendant. ) | |
| ) | |

## I. INTRODUCTION

Plaintiff Dawn Gerlach ("Plaintiff") commenced this action in the Court of Common Pleas of Erie County, Pennsylvania, alleging that her employer, Defendant MTR Gaming Group, Inc., t/a/d/b/a Presque Isle Downs & Casino ("Defendant"), discriminated against her based on her physical disabilities in violation of the Americans With Disabilities Act ("ADA") and Pennsylvania Human Relations Act ("PHRA"). Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1447 and this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1367. Dkt. No. 1. Thereafter, Defendant filed the instant motion for summary judgment on Plaintiff's claims. Dkt. No. 31. Having reviewed the motion, opposition, the record of the case, and the relevant legal authority, the Court will deny the motion. The reasoning for the Court's decision follows.

## II.     FACTUAL BACKGROUND[1]

Defendant is a casino and horseracing track complex located in Summit Township, Pennsylvania. Plaintiff worked in Defendant's Food & Beverage Department. She began her employment with Defendant in May 2009 and continued working there until September 28, 2012 when her position was one of five positions eliminated in the Food & Beverage Department. Plaintiff was initially hired as a "Buffet Cook III," but was promoted and/or laterally transferred several times over the years until she received her final position of Employee Café Kitchen Supervisor in March 2012. Plaintiff also received several pay raises during her time working for Defendant, including a final "2% merit raise" in May 2012 four months before her position was eliminated. Finally, Plaintiff received a corrective action notice in September 2010 and a verbal warning in August 2011, but neither resulted in any disciplinary action against her.

Plaintiff was diagnosed with rheumatoid arthritis and narcolepsy in 2010 and she formally requested accommodations for her medical conditions in 2012, including that she not be required to perform cutting and chopping duties during times that her arthritis "flares up." The parties dispute how Defendant responded to the accommodations request. Defendant claims that Plaintiff's direct supervisor, Jodi Hoffman-Porter, directed that any cutting, chopping, and lifting duties be reassigned to another employee whenever needed. Plaintiff charges that Ms. Hoffman-Porter never reassigned these duties, although she admits that Ms. Hoffman-Porter did not "force" her to perform cutting and chopping duties when Plaintiff experienced a flare-up of her arthritis. Dkt. No. 36, ¶ 34. Plaintiff testified that she felt "persecuted" for making her accommodations request. *Id*. at ¶ 35.

---

[1] The following factual allegations are undisputed by the parties, unless otherwise noted. *See* Dkt. Nos. 31, 36.

Thereafter, on February 13 and 24, 2012, Plaintiff provided Defendant with two letters from her treating physician that stated that Plaintiff should be assigned to work shifts that begin between the hours of 8:00am and 12:00pm. At this time, Plaintiff was employed as a Buffet Supervisor. Defendant claims that prior to receipt of these letters, all three Buffet Supervisors in the Food & Beverage Department, including Plaintiff, were assigned shifts on a rotating schedule, including one shift that began at 5:00am. Therefore, Defendant alleges, it transferred Plaintiff to the position of Employee Café Kitchen Supervisor, which Defendant contends, relieved Plaintiff of the rotating schedule and early morning shift required of all Buffet Supervisors and provided a consistent week-to-week schedule.

Plaintiff counters that in response to the letters from her treating physician, she was called into a meeting with Perry Wiley, the director of the Food & Beverage Department and Luisa Heifner, the head of Human Resources. Plaintiff claims that in this meeting, she was presented with multiple disciplinary corrective action notices and she assumed she was about to be terminated. However, she contested the validity of each of the notices and they were withdrawn by the end of the meeting; none was ever placed in Plaintiff's personnel file.

Plaintiff further alleges that approximately two weeks after this meeting, she was forced to accept the transfer to the Employee Café Kitchen Supervisor position. She claims this position had not been filled for several years and that the position was a "dead" position. Dkt. No. 31, Ex. 4, Gerlach Dep. at 57, 88. Plaintiff asserts that she was transferred to this position because Defendant knew the position would be eliminated in a matter of months due to upcoming cost-cutting measures (indeed, the position was eliminated approximately six months after she was transferred).

## III. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate if, drawing all reasonable inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Analysis

The ADA was enacted in 1990 to "prevent otherwise qualified individuals from being discriminated against in employment based on a disability." *Gaul v. Lucent Techs. Inc*., 134 F.3d 576, 579 (3d Cir. 1998) (citing 29 C.F.R. pt. 1630, app. at 347-48 (1997)). Under the ADA, employers are prohibited from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Id. (quoting 42 U.S.C. § 12112(a) (1995)).[2] Plaintiff alleges that Defendant transferred her to a position that it knew would be eliminated as part of cost-cutting measures because she suffers from physical disabilities and had requested accommodations for the same. Dkt. No. 1 at ¶ 16. Plaintiff asserts that Defendant's action violates the ADA and PHRA.

---

[2] The Third Circuit has held that the "PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fosold v. Justice*, 409 F.3d 178, 184, n. 8 (3d Cir. 2005) (quoting *Fogleman v. Merch Hosp., Inc*., 283 F.3d 561, 567 (3d Cir. 2002)). The parties do not claim that this Court should apply PHRA in a manner different from the provisions of ADA. Therefore, the Court will apply to Plaintiff's PHRA claims to the same federal standard applicable to her ADA claims.

Plaintiff's claims are governed by the familiar burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, Plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If she is able to establish a prima facie case, "the burden shifts" to Defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action it took against her. *Id*. If Defendant carries this burden, the burden of production shifts back to Plaintiff to establish by a preponderance of the evidence that Defendant's proffered reason was merely a "pretext" for discrimination. *Id*. at 804. If Plaintiff is unable to meet either of her burdens under this framework, Defendant is entitled to summary judgment. On the other hand, if Plaintiff satisfies both of these burdens, summary judgment must be denied.

### 1. Plaintiff States a Prima Facie Case of Discrimination

In order to establish a prima facie case of discrimination under the ADA (and the PHRA), Plaintiff must demonstrate: "(1) that [s]he is disabled within the meaning of the ADA, (2) that [s]he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that [s]he was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). Here, Defendant does not contest the first and second elements of Plaintiff's prima facie case. It does, however, challenge the third element, arguing that the record does not support a finding that Plaintiff's termination was the result of discrimination.

As an initial matter, Defendant argues that there is no direct evidence of discrimination in the record. According to Defendant "[t]he record contains no evidence that any [Defendant]

5

employee, let alone a decision maker, made any comments or took any actions evidencing that [Plaintiff's] termination was motivated by her disabilities or use of accommodations." Dkt. No. 32 at 11. Next, Defendant argues that Plaintiff's direct supervisor, Ms. Hoffman-Porter was not involved in "determining which positions would be eliminated in the cost-cutting reductions in force." *Id*. Therefore, Defendant claims, even if the record contained some evidence "that Ms. [Hoffman-]Porter harbored some discriminatory animus towards [Plaintiff]," Defendant would still be "entitled to summary judgment because Ms. [Hoffman-]Porter was not a decision maker relative to the elimination of [Plaintiff's] position." *Id*. at 11-12.

Defendant is mistaken. First, Plaintiff is not required to present direct evidence of discrimination in order to establish her prima facie case. Rather, she can satisfy this requirement through circumstantial evidence. *See EEOC v. Grane Healthcare Co*., 2 F. Supp. 3d 667, 699 (W.D. Pa. 2014) (quoting *Desert Palace, Inc. v. Costa*, 539, U.S. 90, 100 (2003) ("Circumstantial evidence is not only sufficient to sustain a finding of liability for intentional discrimination, 'but may also be more certain, satisfying and persuasive than direct evidence.'") Plaintiff claims that within just a few days of requesting accommodations, she was called into a meeting with Mr. Wiley, the director of the Food & Beverage Department, and Ms. Heifner the head of Human Resources. She claims that at the meeting she was presented with several written notices of disciplinary action and that these notices were written up as a pretense for firing her for seeking accommodations for her disabilities. While the notices never made it into her personnel file, Plaintiff's direct supervisor, Ms. Hoffman-Porter, testified that she was instructed by Mr. Wiley to create "multiple write-ups on [Plaintiff]" before his meeting with Plaintiff. Dkt. No. 31, Ex. 3 at 35 (Hoffman-Porter Dep.). The close proximity in time between Plaintiff's request for accommodations and Mr. Wiley's request that Ms. Hoffman-Porter create "multiple"

disciplinary notices for Plaintiff is strong circumstantial evidence that Mr. Wiley was unhappy that Plaintiff sought accommodations for her disabilities.

In addition, Defendant concedes that Mr. Wiley is one of the individuals who made the decision to eliminate Plaintiff's position. Based on the foregoing evidence that Mr. Wiley requested that Ms. Hoffman-Porter create several disciplinary write ups within a few days of Plaintiff seeking accommodations for her disabilities, there is sufficient evidence in the record for a trier of fact to reasonably conclude that Mr. Wiley's decision was motivated by discrimination animus. *See*, *e.g.*, Dkt. No. 31, Ex. 3 at 33-34; Dkt. No. 31, Ex. 4 at 75-79 (Gerlach Dep.). Therefore, Plaintiff has established a prima facie case for discrimination.

### 2. Plaintiff Presents Sufficient Evidence from which a Trier of Fact Could Reasonably Conclude that the Defendant's Pro-offered Reason for Firing Plaintiff Is False

Having determined that Plaintiff stated a prima facie claim for discrimination under the ADA and PHRA, the burden now shifts to Defendant to articulate a legitimate, non-discriminatory reason for its decision to terminate Plaintiff. *McDonnell Douglas*, 411 U.S. at 802. Defendant claims that it eliminated Plaintiff's position as part of a larger reduction-in-force and cost-cutting measure prompted by increased competition from its competitors. This is a legitimate, non-discriminatory reason for terminating Plaintiff, thus the burden returns to Plaintiff to show that Defendant's stated reason for eliminating her position was merely a pretext for discrimination. *Id*. at 804. Plaintiff must now point to evidence that: "1) casts sufficient doubt upon … the legitimate reason[] proffered by [Defendant] so that a factfinder could reasonably conclude that [the] reason was a fabrication" or 2) permits the factfinder to reasonably infer "that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994).

Plaintiff presents the following evidence from which she claims the trier of fact could reasonable infer that discrimination was the motivating force behind her termination: (1) Mr. Wiley requested Ms. Hoffman-Porter to create multiple disciplinary notices after Plaintiff requested accommodation for her disabilities [Dkt. No. 31, Ex. 3 at 35 (Hoffman-Porter Dep.]; (2) Plaintiff was transferred to a "dead" position that had not been filled for a number of years at a time when the supervisors "knew that there [were] going to be some cuts coming," [*Id*. at 38]; (3) Ms. Hoffman-Porter testified that Plaintiff's accommodation requests could have been met in Plaintiff's current (at the time she made the requests) position of Buffet Supervisor (*Id*. at 26-27); and (4) at least one other individual of the four who were terminated at the same time Plaintiff was terminated had also sought accommodations for a disability [Dkt. No. 36, Ex. 4].[3]

This Court finds that Plaintiff has created a dispute of fact as whether discrimination was the motivating force behind Defendant's decision to eliminate Plaintiff's position. Therefore, Defendant's motion for summary judgment must be denied. *See Resco Products, Inc. v. Bosai Minerals Group, Co., Ltd.*, 158 F. Supp. 3d 406, 417 (W.D. Pa. 2016) (in deciding a summary judgment motion, a court must "draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party").[4]

---

[3] In support of this claim, Plaintiff submitted a copy of a Charge of Discrimination allegedly filed with the Pennsylvania Human Relations Commission by Kathi L. Sinnott, another employee who allegedly was terminated at the same time that Plaintiff was fired. Defendant argues that this Court should ignore this "unauthenticated, unsworn hearsay statement" as "patently inadmissible." Dkt. No. 41 at 10. While admittedly, the Charge of Discrimination was not attached to an affidavit verifying its authenticity, the statement has other indicia of authenticity (*e.g.* it appears to be on an official EEOC form and was signed under the penalty of perjury). Moreover, the Federal Rules of Civil Procedure only requires that evidence relied on in defeating a summary judgment motion be "*capable* of admission at trial." *Bender v. Norfolk Southern Corp*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014) (emphasis in original). The Charge of Discrimination satisfies this requirement.

[4] Defendant devotes much of its reply in support of its motion for summary judgment to arguing that any challenge Plaintiff makes regarding her transfer to the Employee Café Supervisor position is time-barred. Defendant is mistaken. Plaintiff claims that her transfer to the Employee Café was part of a plan by Defendant to "create temporal space between the decision to terminate" Plaintiff and her request for accommodation, thus the decision to transfer Plaintiff is directly relevant to Plaintiff's timely claim of discrimination. Dkt. No. 1 at ¶ 14.

## IV. CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES Defendant's motion for summary judgment [Dkt. No. 31]. The Court further DENIES as MOOT Plaintiff's motion for leave to file a sur-reply [Dkt. No. 42].

Dated this 18th day of September 2018.

Barbara Jacobs Rothstein
U.S. District Court Judge